IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| HENRY S. GARZA, | § |
|      Petitioner, | § |
| | § |
| vs. | §   C.A. NO.  C-06-345 |
| | § |
| NATHANIEL QUARTERMAN, | § |
| Director, Texas Department of | § |
| Criminal Justice, Correctional Institutions | § |
| Division, | § |
|      Respondent. | § |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the Stevenson Unit in Cuero, Texas.  Petitioner, proceeding *pro se* and *in forma pauperis*, filed this petition pursuant to 28 U.S.C. §§ 2241 and 2254 on August 8, 2006[1] (D.E. 1).  The underlying conviction which is the subject of the petition is a 2001 Live Oak County conviction for the felony offense of driving while intoxicated and of being an habitual felony offender.  Petitioner argues that he was denied effective assistance of counsel.  On December 12, 2006 respondent filed an answer in which he argued that petitioner's cause of action should be dismissed, to which petitioner did not respond (D.E. 13).

## JURISDICTION

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

---

[1]There is a discrepancy regarding the date of filing, as discussed below.  However, the difference in the filing dates is not relevant to the issues in his case.

**BACKGROUND**

**A.  Facts**

The Thirteenth Court of Appeals summarized the facts of petitioner's case in the following

manner:

> On May 21, 2000, around 12:50 a.m., DPS Officer Robert Mack Driggers was in a patrol car traveling north on U.S. 281 near George West, Texas.  Appellant and his passenger, Luis Canales, were traveling on the same road in the opposite direction.  Appellant failed to dim his high beams as he approached and passed the patrol car.  Officer Driggers thereupon reversed direction, pursued, and stopped appellant for a traffic violation.
>
> Before Officer Driggers got out of his patrol car, Canales opened the passenger door and stepped out.  Officer Driggers yelled at him to get back in the car, but not before appellant, the driver of the vehicle, moved over to the passenger side and exited the passenger door.  Canales then re-entered the car through the passenger door and slid over to the driver's seat.  Appellant followed, now taking a position in the passenger seat.
>
> Because of the odor of alcohol from appellant and the condition of appellant's eyes, which Officer Driggers observed to be "bloodshot, kind of glazed over," he conducted a series of field sobriety tests.  After the third field sobriety test, Officer Drigger's concluded appellant was intoxicated, and placed him under arrest.

Garza v. State, No. 13-01-511-CR (Tex. App.–Corpus Christi 2002).

**B.  Procedural Background**

Following a plea of not guilty, petitioner was convicted of "Driving While Intoxicated –

Felony Habitual" in the 156th Judicial District Court of Live Oak County, Texas, in Cause No. L-00-

0045-CR-B, styled The State of Texas v. Henry Sevilla Garza (Ex Parte Garza, App. No. WR-

41,871-03 at 48).  Petitioner requested that the court assess punishment and on June 28, 2001

petitioner was sentenced to 25 years imprisonment in TDCJ-CID (Id.).  Petitioner appealed to the

Thirteenth Court of Appeals and his conviction was affirmed on September 3, 2002 (Id.).  Petitioner

filed a petition for discretionary review ("PDR") on November 4, 2002 which was denied on April 11, 2003 <u>Garza v. State</u>, No. 1935-02 (Tex. Crim. App. 2003).

Petitioner filed two applications for habeas relief in state court.  The first one, <u>Ex Parte Garza</u>, App. No. WR-41,871-02, was dismissed because his direct appeal was still pending. (<u>Id.</u> at cover.)

Petitioner filed his second application for habeas relief on October 13, 2003 and the Texas Court of Criminal Appeals found that there were contested issues of fact and ordered the trial court to resolve the factual issues and issue findings of fact and conclusions of law (<u>Ex Parte Garza</u>, App. No. WR-41,871-03 at 2 and order issued January 19, 2005).  The trial court held a hearing on June 7, 2005 and issued findings of fact and conclusions of law on June 23, 2005 (<u>Ex Parte Garza</u>, App. No. WR-41,871-03, Supp. Record).  The Texas Court of Criminal Appeals denied the application without a written order on the findings of the trial court with hearing on September 14, 2005 (<u>Ex Parte Garza</u>, App. No. WR-41,871-03 at cover).

The date on which petitioner filed his federal habeas application is unclear.  He signed a declaration stating that he placed the application in the prison mail system on June 28, 2006, but it was received in the federal district clerk's office on August 8, 2006 in an envelope post-marked August 7, 2006.  The envelope bears a return address in Corpus Christi, Texas and apparently was mailed by someone outside the prison (D.E. 1).

Respondent moves to dismiss petitioner's habeas claim arguing that (1) it is time-barred and (2) petitioner received effective assistance from his attorney at trial.  Petitioner did not respond to the motion to dismiss.

**APPLICABLE LAW**

**A.  Statute of Limitations**

Respondent seeks to dismiss petitioner's application for habeas corpus on the grounds that the application was filed outside the one-year limitation period set by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Regarding the deadline for filing an application for writ of habeas corpus, the statute provides:

(d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant  was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244.  Petitioner filed his current application for writ of habeas corpus after the effective date of the AEDPA and so is subject to its provisions.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997).

Petitioner's PDR was denied on April 11, 2003 and the statute of limitations began running 90 days later on July 10, 2003, the last day on which he could have filed an application for a writ of certiorari.  SUP. CT. R. 13.  Accordingly, the statute of limitations would have run on July 9, 2004.

A properly filed habeas petition tolls the statute of limitations during its pendency. Petitioner had a habeas action pending in state court from October 13, 2003 through September 14, 2005, a period of 703 days.  Adding 703 days to July 9, 2004 extends the deadline for filing to June 12, 2006.  Petitioner signed a certification that he placed his petition in the prison mail system on June 28, 2006, although it was not received by the clerk's office until August 8, 2006.[2]  In any event, it was untimely and should be dismissed.

In the event the district court does not adopt the recommendation that petitioner's habeas corpus action be dismissed as untimely, the following analysis of the merits is offered.

## B.  Merits

### 1.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

---

[2]"Under the 'mailbox rule,' a prisoner's federal habeas corpus petition is deemed filed when he delivers the petition to prison officials for mailing to the district court."  Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999)(citing Spotville v. Cain, 149 F.3d 374, 376-78 (5th Cir. 1998). Respondent asserts that petitioner must not have given his petition to prison officials on June 28, 2006 because it arrived at the district clerk's office post-marked August 7, 2006 and was marked with the return address of someone living in Corpus Christi.  Respondent argues that petitioner must have given the complaint to someone outside the prison system to mail for him and that under those circumstances, the "mailbox rule" does not apply.  See Dison v. Whitley, 20 F.3d 185, 187 (5th Cir. 1994)(prisoner's use of an unknown agent to file habeas appeal does not trigger mailbox rule).  Even if the mailbox rule did apply in petitioner's case, his application is still untimely because he does not assert that he gave it to prison officials until June 28, 2006, 16 days after the deadline.

28 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Williams v. Taylor, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d (2000).

Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. Neal v. Puckett, 239 F.3d 683, 687 (5th Cir. 2001)(citing Williams, 120 S.Ct. at 1522-1523). A federal court has no authority to grant habeas corpus relief simply because it concludes in its independent judgment that a state court's judgment is erroneous or incorrect. Neal, 239 F.3d at 687. In determining whether a state court decision in a habeas case is reasonable, the focus is on the ultimate legal conclusion reached by the state court and not on whether the state court considered and discussed every angle of the evidence. "[T]he only question for a federal habeas court is whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" Neal, 239 F.2d at 696 (citing Hennon v. Cooper, 109 F.3d 330, 334-335 (7th Cir. 1997)).

The Texas Court of Criminal Appeals denied petitioner's application without written order on the findings of the trial court after a hearing. Accordingly, petitioner must show that the denial of habeas relief in state court was contrary to, or involved an unreasonable application of, clearly

6

established federal law, or was based on an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).

### 2.  Ineffective Assistance of Counsel

Petitioner argues that his counsel was ineffective for a number of reasons: (1) He failed to watch a video taken by the arresting officers at the time petitioner was arrested for Driving While Intoxicated; (2) He failed to subpoena witnesses in a timely manner and (3) He failed to make an independent investigation of petitioner's case.

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).  He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable.  Id., 466 U.S. at 687-8, 104 S.Ct. at 2064.  Petitioner must show "significant prejudice" in a noncapital context.  Armstead v. Scott, 37 F.3d 202 (5th Cir. 1994), cert. denied, 115 S.Ct. 1709, 131 L.Ed. 2d 570 (1995)(citing Spriggs v. Collins, 993 F.2d 85, 88, n. 4. (5th Cir. 1993)).  Prejudice in this context means that the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

### a.  Failure to Watch the Video Tape

At trial, Robert Driggers, a state trooper with the Texas Department of Public Safety, testified that once petitioner was transported to the station and informed of his rights, Driggers asked him several times if he was the driver of the car and petitioner told him that he was not driving the car at the time it was stopped (2 SF 116-118).  Another state trooper, Guadalupe Ramon,

7

also testified that plaintiff denied being the driver of the car (3 SF. 67-68).  A third law enforcement officer testified that petitioner was belligerent and smelled of alcohol (3 SF 101-102).  At trial, petitioner testified that he never told Driggers that he was not driving the car at the time the car was stopped (3 SF 167).  He claimed that he never denied that he was driving the car, but did deny that he was intoxicated (Id.).  Petitioner also testified that a female jailer named Josie questioned him and wrote down his responses (3 SF 174).

During her cross-examination of petitioner, the prosecuting attorney played part of the video tape of petitioner's arrest and subsequent processing at the jail.  The video tape showed petitioner being questioned by Trooper Driggers.  When Driggers asked petitioner if he had been driving a vehicle, petitioner responded "No."  (3 SF 185).  In other words, the video tape directly contradicted petitioner's trial testimony, regarding both his claim that he never denied driving the car and also that he was questioned by the jailer rather than Trooper Driggers.  Petitioner attempted to explain the differences in his recollection of events by saying he was confused and the tape must have been turned off before he talked to the female jailer (3 SF 191-192).  The prosecutor used the discrepancies in the tape to argue to the jury that petitioner was lying to them when he said that he did not deny driving the car (4 SF 57-58).

Petitioner was found guilty by the jury and the trial judge sentenced him to 25 years, which was the minimum sentence he could be assessed based on his history of prior offenses (4 SF 61-62, 130; Transcript of Pretrial Motions, p. 18).  Prior to the trial, the State of Texas offered to drop an enhancement count and recommend a 15-year sentence to petitioner in exchange for a guilty plea (Tr. of Pretrial Motions, p. 18).  Petitioner conferred with his counsel and did not accept the offer (Tr. of Pretrial Motions, pp. 18-20).

In his state court habeas application, petitioner raised the issue of his attorney failing to watch the video tape prior to trial.  At the evidentiary hearing held in the state court proceeding, petitioner's trial attorney, Charles Manning, testified that the first time he saw the video tape that was shown at petitioner's hearing was at the pre-trial suppression hearing and that he only watched part of it at that time (Ex Parte Garza, App. No. WR-41,871-03, Supp. Clerk Record at 14).  He explained that prior to the trial petitioner seemed confident about what had happened on the night of his arrest and based on his description of events, Manning did not think he was intoxicated at the time he was arrested (Id. at 15).  Petitioner asserted to him that the arresting officer, Driggers, was lying about the events and also that he (petitioner) had been interrogated by a female jailer at the police station (Id.).  Based on that information and without viewing the video tape, Manning concluded that petitioner should testify at the hearing (Id. at 15-16).

Manning sent petitioner a letter dated November 5, 2001 in connection with the appeal brief he filed on petitioner's behalf.  In the letter, Manning states that he made "some pretty serious mistakes" in his representation of petitioner and that the worst one was letting petitioner testify without having reviewed the entire videotape.  He wrote that if he had reviewed the tape, he would have advised petitioner not to tell the jury that he did not deny being the driver and not to testify that he answered the DWI questions to the jailer rather than to Driggers.  He also noted that petitioner did talk to the jailer earlier on the tape, but the jury did not see that part of the tape.  He said that if they had known what was on the videotape petitioner would have avoided the claim by the prosecutor that he was lying about talking to the jailer and lying about denying he was driving the car (Ex Parte Garza, WR-41,871-03 at 36-37).

At the hearing held in the state habeas proceeding, Manning reiterated that if he had watched the videotape and realized that there were big discrepancies between what petitioner told

9

him prior to trial and what the videotape showed, petitioner might still have testified, but he could not say for sure that he would have testified (Ex Parte Garza, App. No. WR-41,871-03, Supp. Clerk Record at 16). Manning said he should not have relied on what petitioner told him, but should have watched the tape before trial. Because petitioner's testimony differed from the videotape, the prosecutor was able to argue that petitioner could not remember what happened that night because he was intoxicated and also argued that he was a liar (Ex Parte Garza, App. No. WR-41,871-03, Supp. Clerk Record at 17). In both the letter and at the hearing Manning also said that upon viewing the videotape when he was preparing petitioner's appeal he found other areas where information from the videotape could have helped the defense (Id. at 19-20).

At the hearing Manning also acknowledged that he had written a letter to the prosecuting attorney after the trial in which he had stated that he was motivated to finish the trial, in part, because he was not being paid very much and he knew that he was not making enough money to support his office or to justify putting aside private paying clients. He added, "I didn't find time to review the videotape before or during the trial, which led to some major blunders in the testimony." (Id. at 27). Manning further commented that he did not think petitioner received a fair trial (Id. at 29).

Also at the hearing, in response to questions by the attorney for the state, Manning acknowledged that at the time he gave petitioner advice about testifying, he had seen some of the police reports, heard the trial testimony and had discussed the case with petitioner and none of that information would have caused him to advise petitioner not to testify (Id. at 39-40). He thought he was giving him sound advice, but he did not realize what was on the tape (Id. at 39).

Following the hearing, the trial court made the following Findings of Facts and Conclusions of Law:

1.  The Court finds that trial counsel interviewed Applicant about the facts and circumstances of the offense and accepted as true what Applicant told him.

2.  The court finds that trial counsel advised Applicant to testify, and that that advice was primarily based on information trial counsel had obtained directly from the Applicant and from offense reports and other discovery materials before trial.

3.  The Court finds that it is unlikely that Applicant's decision to testify, and trial counsel's advice to him concerning the decision, would have been different because of information from the portion of the video tape not viewed by counsel before trial.

4.  The Court finds that Applicant does not say that he would not have testified had he been fully aware of the portion of the video tape not viewed by counsel before trial.

5.  The Court finds that trial counsel did not incorrectly advise Applicant to testify.

6.  The Court finds that the portion of the video tape that trial counsel did not view before trial did not prevent him from impeaching the State's witness on the key issues in the case.

(Ex Parte Garza, App. No. WR-41,871-03, Findings of Fact and Concl. of Law, p. 2).

Petitioner argues that his attorney was ineffective for failing to investigate his case and, in particular, for failing to watch the videotape prior to trial.  Regarding the first prong of the Strickland test, whether Manning's conduct fell below an objective standard of reasonableness, failing to view the tape was objectively unreasonable.  The tape provided an unbiased account of the arrest and showed the events before, during and after the traffic stop.  Given the contested issues of fact in the case, it is clear that Manning should have watched the entire tape prior to the trial.

However, in order to show that his attorney was ineffective, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.  The tape showed petitioner was the driver of the car and that during questioning he denied being the driver of the car. If Manning had viewed the tape prior to trial, it would have made clear that petitioner's claim that he did not deny being the driver was refuted by the tape.  At that point, petitioner could have either

11

chosen not to testify, in which case the testimony of the three law enforcement officers would have been consistent and would have remained unimpeached, with the exception of some of the details regarding the field sobriety tests.  Or, petitioner would have testified but would have had to admit that he denied being the driver of the car.  Under neither scenario would a likely conclusion have been that the jury would have found petitioner not guilty of driving while intoxicated.

Regarding petitioner's claim that he was asked questions by the female jailer rather than by Vidaurri, while the videotape would have revealed that petitioner did speak to Vidaurri earlier in the evening, at most it would have shown the jury that petitioner did not lie about that, but that he was confused about events that evening.  That evidence would not necessarily have led to a conclusion that he was not intoxicated and would still have provided the prosecutor with the opportunity to tell the jury that the reason he was confused was because he was intoxicated.

Petitioner has failed to show that had his attorney watched the videotape, he would have made decisions in the trial that would have led to a more favorable outcome for him.  Moreover, petitioner has completely failed to demonstrate that the trial court's decision, adopted by the Court of Criminal Appeals, was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  Accordingly, he has not made out a claim that he received ineffective assistance of counsel.

**b.  Failure to Subpoena Witnesses**

Petitioner also argues that his counsel was ineffective for failing to timely subpoena important witnesses, Luis Canales and Allen Perez, who were with petitioner in the car when he was arrested.  In the November 2001 letter Manning wrote to petitioner, he suggested that his lack of diligence in seeking subpoenas for the witnesses might rise to the level of ineffective assistance of counsel (Ex Parte Garza, WR-41,871-03 at 36).  At the state habeas hearing, Manning testified

that he and petitioner discussed asking for a continuance because the witnesses they needed had not

been located, but petitioner "did not seem to be that interested in delaying the case" and Manning

deferred to him (Ex Parte Garza, App. No. WR-41,871-03, Supp. Clerk Record at 23).  Manning

added that he "figured that he probably knew those guys were never going to come in." (Id. at 24).

Manning also described the witnesses as "crucial defense witnesses" and said that having them

there would have made a tremendous difference in petitioner's case.  He added that he did not know

if he ever would have been able to find the witnesses (Id.).

In response to questions by the State's attorney, Manning said that he was sure that he made

attempts to contact Canales and Perez by telephone and he was working with petitioner's relatives

to find them but was unable to reach them (Id. at 30).  He could not say with any certainty what

information they might have had and conceded that although they might have been helpful, they

might also have substantiated the State's case against petitioner (Id.).

Regarding the failure to subpoena the witnesses, the trial court entered the following

Findings of Fact and Conclusions of Law:

> 7.  The court finds that trial counsel did not fail to subpoena key witnesses Luis Canales and
> Allen Perez who were passengers in the car when Appellant was arrested.  The Court finds
> that trial counsel applied for subpoenas for these witnesses, but the witnesses could not be
> found.  Trial counsel personally attempted to locate the witnesses but was unable to do so.
>
> 8.  The court finds that Appellant agreed to go forward with the trial without seeking a
> continuance for more time to find the witnesses.

(Ex Parte Garza, App. No. WR-41,871-03, Findings of Fact and Concl. of Law, p. 2).

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because

allegations of what a witness would have testified are largely speculative.  Where the only evidence

of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective

assistance with great caution."  Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001)(citations

omitted).  Petitioner did not present affidavits from the absent witnesses to suggest the subject of their testimony and his conclusory speculation about the effect of the testimony falls short of the prima facie showing needed to create a fact question on this issue.  Id. (citing United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983)).

In his state habeas action petitioner did say that Luis Canales, the owner of the car, would have testified that the car's driver-side door was broken and could not be opened from the inside, which was the reason that petitioner, who was driving the vehicle, exited and entered on the passenger side of the car.  The prosecuting attorney implied that petitioner exited from the passenger-side door in an attempt to make it look like he was not driving the car, and when petitioner testified that the driver-side door was broken, the prosecuting attorney argued to the jury that he was lying.  If Canales had appeared and testified about the door, it would have had a positive effect on petitioner's credibility.  Nevertheless, it is unlikely that the evidence would have been sufficient for the jury to find him "not guilty," given the other evidence in the case.  Petitioner has not demonstrated that the state court decision was contrary to clearly established federal law or based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

### c.  Failure to Investigate Case

Petitioner claims that his attorney failed to independently investigate the case and cites as an example that his counsel admitted he made only one call to petitioner's employer and when he discovered that the employer was in a remote part of Texas on an oil drilling site he stated that he could not interview anyone there because of financial reasons.  Petitioner has not shown what a more thorough investigation by his attorney would have revealed.  Without more, he cannot make out a claim that the failure to investigate caused him significant prejudice.

14

For all the above reasons, petitioner has failed to show that his attorneys' errors at trial rose to the level of ineffective assistance of counsel.  Accordingly, summary judgment should be entered for respondent.

## C.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed both on procedural grounds and on the merits.  If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance of a COA on either ground.

## **RECOMMENDATION**

It is respectfully recommended that respondent's motion to dismiss, contained in his answer (D.E. 13) be GRANTED.  Petitioner's application for habeas corpus relief should be DISMISSED as time-barred.  In the alternative, his claim should be DISMISSED on the merits.  It is further recommended that any request for a Certificate of Appealability be DENIED.

ORDERED this 13th day of March, 2007.


B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

16

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415 ( 5th Cir. 1996) (en banc).